PABLO CEPEDA, ET AL., Petitioners and Appellants, v. ANDRÉS A. LUGO, Warden of the District Jail of San Juan, Puerto Rico, Defendant and Appellee.

No. 7245.   Argued March 13, 1936.—Decided July 14, 1936.

*D. Guerrero Noble* for appellant.   *R. A. Gómez* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is a habeas corpus proceeding coming before us on appeal from the District Court of San Juan.   The petitioners

were accused of the unlawful use of explosives, an offense defined and punished in Section 11 of Act No. 67 of May 13, 1934 (Session Laws, page 458, 478). They confessed to having committed the offense charged, and the court sentenced them to imprisonment in jail for a term of five years at hard labor. Some days later they filed in the same District Court a petition for a writ of habeas corpus based upon the following grounds:

1. For the reason that Act No. 67 of 1934 is unconstitutional as containing more than one subject under the same title, since there is included in Section 11 thereof a regulation of the unlawful use of explosives and punishment as a crime of such offense without such subject having been mentioned in the title; for the reason that it imposes excessive fines and cruel and unusual punishments, and for the reason that the legislature has invaded the functions of the judiciary in ordering the judiciary to impose upon persons convicted a punishment at hard labor, notwithstanding the fact that the offense involved is a misdemeanor;

2. For the reason that the judgment is defective in not specifying that the hard labor to which the petitioners have been sentenced shall be on public works, and

3. For the reason that the writ directed to the warden, and by virtue of which the petitioners are confined, is not a certified copy of the judgment.

The petition was heard in the manner provided by law. The District Court in a reasoned opinion held that the law so attacked was constitutional and the judgment valid, but that the writ issued for the execution of the judgment was erroneous. The court entered the following .

"*Judgment.*—For the reasons set forth in the statement of the case and the opinion filed and made a part thereof, the petition filed by the petitioners for a writ of habeas corpus is granted and it is ordered that they be set free, without prejudice to the issuance of a new warrant of arrest by the clerk, containing a literal certified

copy of the judgment entered on August 15 last in criminal case No. 10078, directed to the Warden of the San Juan District Jail, under which authority the said officer shall keep the petitioners in his custody until they shall have served the sentence imposed upon them in the aforesaid criminal case No. 10078. Let the judgment be entered and notified.''

The petitioners, feeling aggrieved with that part of the judgment which orders the issuance of a new warrant, appealed therefrom and in their brief they sustained precisely the same views which they upheld before the trial court, discussing principally the point of the unconstitutionality of the law for the violation of which they were punished.

The title of Act No. 67 of 1934, reads:

''An Act to regulate the manufacture, possession, storage, transportation, sale or gift of explosives in Puerto Rico, defining offenses, prescribing penalties, declaring an emergency, and for other purposes.''

And the Section thereof under which the appellants were punished, reads:

''Section 11.—*Unlawful use; punishment*.—Any person unlawfully using dynamite or other explosive for the purpose of inflicting bodily injury upon, or to terrify and frighten any person, or to injure or destroy any property, or to damage the same in any manner, shall be liable, upon conviction, to pay a fine of not less than two hundred fifty (250) dollars, nor more than five thousand (5,000) dollars, or to imprisonment at hard labor for a term of not less than one (1) year and not to exceed twenty (20) years.''

It is alleged that since our Organic Act provides in Section 34 that ''no bill except general appropriation bills shall be passed containing more than one subject,'' (39 Stat. at Large, Part I, Chap. 145, p. 951) it is necessary to hold that Section 11 of Act No. 67 of 1934 is void, for the reason that such Section comprises a subject not included in the title of the act.

The contention is supported by several citations, among which is that of the case of *Hronek* v. *People*, 8 L.R.A. 837,

838, in which there was attacked as contrary to a constitutional provision similar to ours an act concerning explosives, and in which the Supreme Court of the State of Illinois decided:

"It is insisted that the statute upon which the prosecution is based is unconstitutional in that it is obnoxious to section 13 of article 4 of the constitution of the state, which provides 'that no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title.' The specific objection is made that two distinct subjects are expressed in the title. That objection is without merit. The act is entitled 'An act to regulate the manufacture, transportation, use, and sale of explosives, and to punish an improper use of the same.' The regulation of the use necessarily implies the right to punish an improper use. To 'regulate' means to adjust by rule or regulation; and any attempt to fix rules for the manufacture, transportation, use, and sale of explosives that did not also prescribe punishment for violation of such rules and regulations would necessarily be imperfect. Two different subjects are not included or expressed in or by the title; for the punishment of an improper use flows necessarily and legitimately from the main or substantive object as stated in the title, i. e., to regulate the use, etc., of explosives. It is not necessary that the title shall express all of the minor divisions of the general subject to which the act relates; and it is sufficient if it express the general subject of the act, and all the minor subdivisions germane to the general subject will be held to be included in it. But, if the title expresses such minor subdivisions, which without such expressions would be held to be included within the general subject, such expression will not render the title obnoxious to the constitutional provisions. *Plummer* v. *People,* 74 Ill. 361; *Fuller* v. *People,* 92 Ill. 182; *Magner* v. *People,* 97 Ill. 320; *Cole* v. *Hall,* 103 Ill. 30; *Prescott* v. *City of Chicago,* 60 Ill. 121; *Potwin* v. *Johnson,* 108 Ill. 71; *Timm* v. *Harrison,* 109 Ill. 593; *Hawthorn* v. *People,* Id. 302; *People* v. *Wright,* 70 Ill. 389; *City of Virden* v. *Allan,* 107 Ill. 505."

It is contended that the Supreme Court of Illinois could reach the conclusion which it did because in the title of the act there interpreted there appeared the regulation "of the use" which does not appear in the Puerto Rican act.

In the case of *Posados* v. *Warner Bros. & Co.,* 279 U.S. 340, 343, coming from the Philippines, the Supreme Court of the United States said in part:

"And in support of the judgment below it is insisted that the provision imposing a tax upon stock dividends violates that clause of sec. 3 of the Organic Act which declares: 'That no bill which may be enacted into law shall embrace more than one subject, and that subject shall be expressed in the title of the bill.'

"Act 2833 is entitled: 'An Act establishing the income tax, making other provisions relating to said tax, and amending certain sections of Act Numbered Twenty-seven hundred and eleven.' The insular supreme court held that the subject of the Act was no adequately expressed because a tax on stock dividends is one upon capital, while the title specified only the income tax. But in our opinion that is too strict a construction. Provisions in substance the same as that above quoted are found in many state constitutions. The purpose is to prevent the inclusion of incongruous and unrelated matters in the same measure and to guard against inadvertence, stealth and fraud in legislation. When bills conform to such requirements, their titles serve conveniently to apprise legislators and the public of the subjects under consideration. Courts strictly enforce such provisions in cases that fall within the reasons on which they rest. But, as freedom required or convenient for the effective exertion of the legislative power ought not unnecessarily or lightly to be interfered with, the courts disregard mere verbal inaccuracies, resolve doubts in favor of validity, and hold that, in order to warrant the setting aside of enactments for failure to comply with the rule, the violation must be substantial and plain. *Louisiana* v. *Pilsbury,* 105 U. S. 278, 289. *Montclair* v. *Ramsdell,* 107 U. S. 147, 153. *Read* v. *Plattsmouth,* 107 U. S. 568, 578. *City of South St. Paul* v. *Lamprecht Bros. Co.,* 88 Fed. 449, 451. *Johnson* v. *Harrison,* 47 Minn. 575. Cooley's Constitutional Limitations (7th ed.) p. 202 *et seq.* Sutherland, Statutory Construction (2d ed.) secs. 111, 115–118."

Applying the constitutional provision raised in the concrete case which we are considering, in the light of these decisions, we believe that we must hold that the appellants are not correct. It is true that the question would have been clearer if the Puerto Rican statute concerning explosives had

used in its title the same phraseology as the Illinois statute, but since the word "possession" was used, we are in agreement with the prosecuting attorney that it is susceptible of the same construction as though the word "use" had been employed.

Possession means enjoyment and use, management or enjoyment of something. "Use of weapons," says the Enciclopedia Jurídica Española, vol. 30, p. 570, "amounts to the right to possess, and in proper case, to use the weapon." *"Possessio est usus rei cum effectu sivi eam habendi* (Muhlenbruch)." Enciclopedia Jurídica Española, vol. 25, p. 156.

Moreover, when the phrases "defining offenses" and "prescribing penalties" were used in the title of the act, the legislators were fully advised of the scope thereof. What was thereafter defined in Section 11 as an offense was not something different from the fundamental subject—regulation of explosives—covered by the act, but was on the contrary closely related thereto.

█ Similarly it cannot be contended that Act No. 67 of 1934 imposes cruel and unusual punishments or excessive fines.

It is true that the fine therein provided for may be as high as $5,000, but it is also true that it may be as low as $250. It is true that the term of imprisonment which may be imposed may be as long as 20 years, but it is also true that it may be one year. The discretion of the judge is very broad and is conferred so that it may be used in harmony with the seriousness of the criminal act to be punished. The use of explosives with the intention of causing bodily harm or of terrorizing anyone or to do damage to or destroy any property may be done under circumstances so serious as to justify the imposition of the maximum fixed by the legislature without the punishment being disproportionate to the criminal act. Moreover a fine of $5,000 is not in and of itself excessive and imprisonment

at hard labor for five years does not in and of itself constitute cruel and unusual punishment.

Speaking through Mr. Chief Justice Fuller in the case *In re Kemmler,* 136 U. S. 436, 446, the Supreme Court of the United States said:

"The provision in reference to cruel and unusual punishments was taken from the well-known act of Parliament of 1688, entitled 'An act declaring the rights and liberties of the subject, and settling the succession of the crown,' in which, after rehearing various grounds of grievance, and among others, that 'excessive bail hath been required of persons committed in criminal cases, to elude the benefit of the laws made for the liberty of the subjects; and excessive fines have been imposed; and ilegal and cruel punishments inflicted,' it is declared that 'excessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' Stat. 1 W. & M. c. 2. This Declaration of Rights had reference to the acts of the executive and judicial departments of the government of England; but the language in question as used in the constitution of the State of New York was intended particularly to operate upon the legislature of the State, to whose control the punishment of crime was almost wholly confided. So that, if the punishment prescribed for an offence against the laws of the State were manifestly cruel and unusual, as burning at the stake, crucifixion, breaking on the wheel, or the like, it would be the duty of the courts to adjudge such penalties to be within the constitutional prohibition. And we think this equally true of the Eighth Amendment, in its application to Congress.

"In *Wilkerson* v. *Utah,* 99 U. S. 130, Mr. Justice Clifford, in delivering the opinion of the court, referring to Blackstone, said: 'Difficulty would attend the effort to define with exactness the extent of the constitutional provision which provides that cruel and unusual punishments shall not be inflicted; but it is safe to affirm that punishments of torture, such as those mentioned by the commentator referred to, and all others in the same line of unnecessary cruelty, are forbidden by that amendment to the Constitution.' Punishments are cruel when they involve torture or a lingering death; but the punishment of death is not cruel, within the meaning of that word as used in the Constitution. It implies there something inhuman and barbarous, something more than the mere extinguishment of life."

■ We do not see, finally, that a sentence at hard labor in a case punished by imprisonment in jail constitutes an invasion of the powers of the judiciary by the legislature.

■ It is true that since the offense here invoked is punished by imprisonment in jail, it may be classified as a misdemeanor in accordance with the provisions of Sections 13 and 14 of the Penal Code; that Section 3 of the act of March 8, 1906 (Section 324 of the Code of Criminal Procedure, ed. 1935) provides that if a person be convicted of a misdemeanor and sentenced to jail, the court may in its judgment provide that he be put to work on public works during the period of his imprisonment and that Section 11 of Act No. 67 of 1934 does not leave it to the discretion of the court but requires the imposition of a sentence at hard labor in every case.

Nevertheless, it is also true that the fact that the legislature had passed the first general statute did not exhaust its powers to punish any offense in the manner which it might deem proper. The first statute contains a rule applicable to all cases. The latter contains a special rule applicable to the specific case for which it was passed.

The District Court, therefore, acted correctly. It sustained the appellants in so far as they were correct and denied their petition in so far as it was not well founded. The appeal must therefore be dismissed and the judgment appealed from affirmed.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of this case.