PABLO CEPEDA, JUAN GARCÍA y MANUEL SANJURJO, peticionarios y apelantes, *v.* ANDRÉS A. LUGO, en su carácter de Alcaide de la Cárcel de Distrito de San Juan, Puerto Rico, querellado y apelado.

Núm. 7245.—*Sometido:* Marzo 13, 1936. *Resuelto:* Julio 14, 1936.

*D. Guerrero Noble,* abogado de los apelantes; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Éste es un caso de hábeas corpus en apelación procedente de la Corte de Distrito de San Juan. Los peticionarios apelantes fueron acusados de un delito de uso ilegal de explosivos previsto y castigado en el artículo 11 de la Ley núm. 67 de mayo 13, 1934 (pág. 459), reconocieron haberlo cometido y la corte los condenó a sufrir la pena de cinco años de cárcel con trabajos forzados. Días después presentaron ante la propia corte de Distrito su solicitud de hábeas corpus por los siguientes fundamentos:

1. Porque la Ley núm. 67 de 1934 es inconstitucional porque contiene más de un asunto bajo un mismo título, ya que en su artículo once incluye la reglamentación del uso ilegal de explosivos y la castiga como delito sin haberse expresado dicho asunto en su título; porque impone multas excesivas y castigos crueles e inusitados, y porque el poder legislativo

invade el judicial al ordenar a éste que imponga a los convictos trabajos forzados no obstante tratarse de un delito menos grave;

2. Porque la sentencia es defectuosa ya que no determina que los trabajos forzados a que castigó a los peticionarios lo sean en obras públicas, y

3. Porque el mandamiento dirigido al alcaide y a virtud del cual se les retiene en prisión no es copia certificada de la sentencia.

La solicitud se tramitó de acuerdo con la ley. En una razonada opinión la corte de distrito concluyó que la ley impugnada era constitucional y la sentencia válida, pero que el mandamiento librado para la ejecución de la sentencia era erróneo. Dictó la siguiente

"SENTENCIA.—Por los fundamentos expresados en la relación del caso y opinión unida a los autos y que se hace formar parte de la presente, se declara con lugar la petición de hábeas corpus radicada por los peticionarios y se ordena sean puestos en libertad, sin perjuicio de que por el Secretario se expida un nuevo mandamiento de encarcelación conteniendo una copia literal y certificada de la sentencia dictada el 15 de agosto último en el caso criminal núm. 10078, dirigida al Alcaide de la Cárcel de Distrito de San Juan, bajo cuya autoridad dicho funcionario mantendrá a los peticionarios bajo su custodia hasta que hayan extinguido la sentencia impuéstales en dicho caso criminal núm. 10078. Regístrese y notifíquese."

No conformes los peticionarios con la parte de la sentencia que ordena la expedición de un nuevo mandamiento, apelaron y en su alegato sostienen por entero su posición ante la corte sentenciadora, deteniéndose principalmente en la exposición de sus argumentos en pro de la anticonstitucionalidad de la ley por cuya infracción fueron castigados.

El título de la dicha Ley núm. 67 de 1934, expresa:

"LEY para reglamentar la manufactura, posesión, almacenaje, transporte, venta o donación de explosivos en Puerto Rico, definiendo los delitos, estableciendo penas, declarando una emergencia, y para otros fines."

Y la sección de la misma por virtud de la cual se castigó a los peticionarios apelantes, dice:

"Artículo 11.—*Uso Ilegal.*—*Castigos.*—Toda persona que use dinamita u otro explosivo ilegalmente con el propósito de hacer daño corporal, o de aterrorizar o asustar a cualquier persona, o para hacer daño o destruir cualquier propiedad, o para hacer daño a la misma en cualquier forma, podrá ser castigada, convicta que fuere, a pagar una multa de no menos de doscientos cincuenta (250) dólares, ni de más de cinco mil (5,000) dólares; o a sufrir cárcel con trabajos forzados por un término que no sea menos de un año ni que exceda de veinte años." Leyes de 1934, p. 469.

Se alega que disponiendo como dispone nuestra Carta Orgánica en su sección 34 que "no se aprobará ningún proyecto de ley (39 Stat. at Large, Part I, Chap, 145, p. 951), con excepción de los de presupuesto general, que contenga más de un asunto," precisa concluir que la sección 11 de la Ley núm. 67 de 1934 es nula porque la misma se refiere a un asunto no comprendido en el título de la ley.

La alegación se ilustra con varias citas entre ellas la del caso de *Hronek* v. *People*, 8 L.R.A. 837, 838, en el que se atacó como contraria a un precepto constitucional igual al nuestro una ley sobre explosivos y en el que la Corte Suprema del Estado de Illinois resolvió:

"Se sostiene que el estatuto en que se basa la acusación es inconstitucional toda vez que el mismo viola la sección 13 del artículo cuarto de la Constitución del Estado, que provee que 'no se aprobará ningún proyecto de ley que contenga más de un asunto, el cual deberá ser expresado en su título.' La objeción específica es que su título expresa dos asuntos distintos. La objeción carece de mérito. La ley tiene por título 'ley para reglamentar la manufactura, transporte, uso y venta de explosivos, y para castigar el uso indebido de los mismos.' La reglamentación del uso conlleva necesariamente el derecho a castigar el uso indebido. 'Reglamentar' significa ajustar mediante regla o reglamentación; y cualquier tentativa de fijar reglas para la manufactura, transporte, uso y venta de explosivos que no prescriba también castigo para la infracción de tales reglas y reglamentos sería necesariamente imperfecta. El título no incluye ni expresa dos asuntos distintos, puesto que el castigo por el uso indebido surge

necesaria y legítimamente del objeto principal o sustantivo expresado en el título, es decir, para reglamentar el uso etcétera de explosivos. No es necesario que el título exprese todas las divisiones menores del asunto general a que se refiere la ley; y es suficiente si expresa el asunto general de la ley y se considerará que todas las subdivisiones menores germanas al asunto general están incluídas en el mismo. Mas si el título expresa aquellas subdivisiones menores que sin estar expresadas se considerarían como incluídas dentro del asunto general, tal expresión no hará que el título viole la disposición constitucional. Plummer v. People, 74 Ill. 361; Fuller v. People, 92 Ill. 182; Magner v. People, 97 Ill. 320; Cole v. Hall, 103 Ill. 30; Prescott v. Chicago, 60 Ill. 121; Potwin v. Johnson, 108 Ill. 71; Timm v. Harrison, 109 Ill. 593; Hawthorn v. People, Id. 302; People v. Wright, 70 Ill. 389; Virden v. Allan, 107 Ill. 505.''

Se sostiene que la Corte Suprema de Illinois pudo llegar a la conclusión a que llegara porque en el título de la ley que interpretó constaba la regulación ''del uso'' que no consta en la ley de Puerto Rico.

En el caso de *Posados* v. *Warner B. & Co.*, 279 U. S. 340, 343, procedente de Filipinas, la Corte Suprema de los Estados Unidos, en parte, dijo:

''Y en apoyo de la sentencia inferior se sostiene que la disposición que fija una contribución a los dividendos sobre acciones viola la cláusula del párrafo tercero de la Carta Orgánica que declara: 'No se aprobará ningún proyecto de ley que contenga más de un asunto, el cual deberá ser claramente expresado en su título.'

''La Ley núm. 2833 tiene por título: 'Ley para establecer la contribución sobre ingreso, para fijar otras disposiciones en relación con la misma, y para enmendar ciertas secciones de la Ley núm. 2711.' La Corte Suprema insular resolvió que el asunto de la ley no fué adecuadamente expresado toda vez que una contribución sobre dividendos sobre acciones es una sobre el capital, mientras que el título especificaba solamente la contribución sobre ingresos. Pero a nuestro juicio ésa es una interpretación demasiado estricta. Disposiciones substancialmente iguales a la arriba enunciada pueden hallarse en muchas constituciones estaduales. El fin es impedir que se incluyan materias incongruentes y no relacionadas con la ley en la misma medida legislativa y para evitar inadvertencias, reservas y fraude en la legislación. Cuando los proyectos de ley cumplen tales requisitos,

sus títulos sirven convenientemente para informar a los legisladores y al público en general de los asuntos de que se trata. Las cortes hacen cumplir estrictamente tales disposiciones en los casos que caen dentro de las razones en que se fundan. Pero como la libertad requerida o conveniente para el ejercicio de manera efectiva del poder legislativo no debe ser perturbado innecesaria o ligeramente, las cortes hacen caso omiso de meras inexactitudes de palabra, resuelven las dudas en favor de la validez de la ley y sostienen que, para justificar el dejar sin efecto los estatutos por no haberse cumplido con la regla, la violación debe ser sustancial y clara. Louisiana v. Pilsbury, 105 U. S. 278, 289. Montclair v. Ramsdell, 107 U. S. 147, 153. Read v. Plattsmouth, 107 U. S. 568, 578. City of South St. Paul v. Lamprecht Bros. Co., 88 Fed. 449, 451. Johnson v. Harrison, 47 Minn. 575. Cooley's Constitutional Limitations (7th ed.) p. 202 et seq. Sutherland, Statutory Construction (2d ed.) párs. 111, 115–118.''

Aplicado el precepto constitucional de que se trata al caso concreto que estamos considerando, a la luz de esa jurisprudencia, creemos que debe concluirse que no tienen razón los apelantes. Cierto que la cuestión hubiera sido más clara si el estatuto puertorriqueño sobre explosivos hubiera usado en su título la misma fraseología que el de Illinois, pero habiendo empleado como empleó la palabra ''posesión'', estamos conformes con el Fiscal en que es susceptible de dársele la misma interpretación que si se hubiera empleado la palabra ''uso''.

Posesión significa goce y uso, manejo y disfrute de alguna cosa. ''Uso de armas'' dice la Enciclopedia Jurídica Española, vol. 30, p. 570, ''equivale al derecho de poseer y en su caso, usar el arma.'' *Possessio est usus rei cum effectu sivi eam habendi* (Muhlenbruch).'' Enciclopedia Jurídica Española, vol. 25, p. 156.

Además, cuando en el título de la ley se dijo ''definiendo delitos'' y ''estableciendo penas'', los legisladores quedaron avisados del pleno alcance de la misma. Lo que se definió luego en la sección once como delito no fué algo distinto de la materia fundamental—reglamentación de explosivos—tratada por la ley, sino que está en estrecha relación con ella.

■ Tampoco puede sostenerse que la Ley núm. 67 de 1934 impone castigos crueles e inusitados o multas excesivas.

Cierto que la multa que establece puede subir hasta cinco mil dólares, pero también lo es que puede limitarse a doscientos cincuenta. Cierto que el término de prisión que fija puede llegar hasta veinte años, pero también lo es que puede quedar en uno. La discreción del juez es amplísima y se confiere para ser ejercida en armonía con la gravedad del acto delictivo perpetrado. El uso de explosivos con el propósito de causar daño corporal o de aterrorizar a cualquier persona o para hacer daño o destruir cualquier propiedad puede llevarse a efecto bajo circunstancias que revistan una gravedad tal que justifiquen la imposición del máximum fijado por la legislatura sin que el castigo resulte desproporcionado al acto delictivo. Además una multa de cinco mil dólares no es en sí misma excesiva y la prisión con trabajos forzados por veinte años no constituye por sí sola tampoco castigo cruel o inusitado.

La Corte Suprema de los Estados Unidos por medio de su Juez Presidente Fuller en el caso *In re Kemmler,* 136 U. S. 436, 446, se expresó así:

"La disposición referente a castigos crueles e inusitados fué tomada de la bien conocida ley del parlamento de 1688, titulada 'Ley para declarar los derechos y libertades de los súbditos, y disponiendo la sucesión de la corona', en la cual, después de relatar varios fundamentos de agravio, y entre otros que 'fianzas excesivas han sido exigidas de personas envueltas en casos criminales, para evadir el beneficio de las leyes hechas para la libertad de los súbditos; y multas excesivas han sido impuestas; e infligidos castigos crueles e ilegales', se declara que 'no se exigirán fianzas excesivas, ni se impondrán multas desproporcionadas ni castigos crueles e inusitados'. Stat. 1 W. & M. c. 2. Esta Declaración de Derechos se refiere a actos de los departamentos ejecutivos y judicial del gobierno de Inglaterra; pero el texto en cuestión usado en la constitución del estado de Nueva York fué intentado particularmente para que operara contra la legislatura del estado a cuyo control estaba limitado casi totalmente el castigo del delito. De aquí que, si el castigo prescrito para una ofensa contra las leyes del estado era manifiestamente cruel

e inusitado, como ser quemado en la picota, crucificado, descuartizado por una rueda, u otros por el estilo, sería el deber de las cortes decidir que tales penalidades están dentro de la prohibición constitucional. Y creemos esto igualmente cierto en cuanto a la Enmienda Octava en su aplicación al Congreso.

"En Wilkerson v. Utah, 99 U. S. 130, 135, el Juez Sr. Clifford, al emitir la opinión de la Corte refiriéndose a Blackstone, dijo: 'La dificultad acompañará al esfuerzo para definir con exactitud el alcance de la disposición constitucional, que dispone que no se infligirán castigos crueles e inusitados; pero puede afirmarse que castigos de tortura tales como los mencionados por el comentarista a que nos hemos referido, y todos los otros en la misma línea de crueldad innecesaria, están prohibidos por esa enmienda de la constitución.' Los castigos son crueles cuando envuelven tortura o una muerte lenta; pero la pena de muerte no es cruel, dentro del significado de esa palabra como se usa en la Constitución. Ella implica allí algo inhumano y bárbaro, algo más que la mera extinción de la vida."

■ No vemos, por último, que la imposición de trabajos forzados en un caso castigado con cárcel constituya una invasión de los poderes judiciales por parte de la Legislatura.

■ Es cierto que castigado el delito de que se trata con pena de cárcel puede calificarse de menos grave (*misdemeanor*) de acuerdo con lo dispuesto en los artículos 13 y 14 del Código Penal; que la sección 3 de la ley de 8 de marzo de 1906 (artículo 324 Código Enjuiciamiento Criminal, ed. 1935) prescribe que si una persona fuere convicta de delito menos grave (*misdemeanor*) y sentenciada a cárcel la corte a su arbitrio puede disponer que se le ponga a trabajar en obras públicas durante el período de su encarcelamiento, y que la sección 11 de la Ley núm. 67 de 1934 no deja discreción al tribunal debiendo imponerse trabajos forzados en todos los casos.

Pero también lo es que por el hecho de haber dictado la primera ley general, no agotó la Legislatura su poder de castigar en la forma que estimare justa cualquier delito. La primera ley contiene una regla aplicable a todos los casos. La segunda una especial aplicable al caso específico para el cual fué dictada.

La corte de distrito actuó, pues, correctamente. Dió la razón a los apelantes en aquello que la tenían y se la negó en cuanto a sus peticiones que no estaban bien fundadas. *La apelación debe ser en tal virtud declarada sin lugar quedando confirmada la sentencia recurrida.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.